FILED
2013 Feb-01  PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRISTIN HURT, and** | ) | |
| | ) | |
| **JANE DOE #1, by and through** | ) | |
| **JANE DOE #1's MOTHER and** | ) | **CIVIL ACTION NO.:** |
| **FATHER** | ) | |
| | ) | |
| **JANE DOE #2, by and through** | ) | |
| **JANE DOE #2's MOTHER and** | ) | **JURY DEMAND** |
| **FATHER** | ) | |
| | ) | |
| **JANE DOE #3, by and through** | ) | |
| **JANE DOE #3's MOTHER and** | ) | |
| **FATHER** | ) | |
| | ) | |
| **JANE DOE #4, by and through** | ) | |
| **JANE DOE #4's MOTHER and** | ) | |
| **FATHER** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **SHELBY COUNTY BOARD OF** | ) | |
| **EDUCATION, and DAN ACKER,** | ) | |
| **LEE DOEBLER, and STEVE** | ) | |
| **MARTIN, in their Individual** | ) | |
| **Capacities,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |

### CLASS ACTION COMPLAINT

1

## I.   PRELIMINARY STATEMENT

1.   The named Plaintiffs bring this Complaint against Danny Acker, the Shelby County School Board, and other agents responsible for the schools in which Danny Acker worked as a school teacher and bus driver. Defendants failed to meet their obligations to protect Shelby County's county school children.

2.   Since 1992, Shelby County School Board and its agents have known of the Alabama's Department of Human Resources's ("DHR") determination that Acker had touched a minor for the sole purpose of generating personal sexual pleasure.  Since 1992, Shelby County School Board and its agents have also known that DHR had placed Acker on a central registry for sexual offenders.

3.   Despite this finding, Shelby County School Board and its agents failed to take any steps to remove Acker or to monitor his interaction with students to ensure that he did not sexually molest minor students in his custody.

3.   Acker's position as a school teacher and a bus driver gave him ready access to scores of students over his nearly two decades of employment by the Shelby County School Board.

4.   Named Plaintiffs are just a small sample of the students that Acker has confessed to molesting during his tenure in the school system.

## II.   JURISDICTION

6.      The jurisdiction of this Court is invoked pursuant to the Acts of Congress codified at U.S.C. §§ 1331, 1343, 1367, 2201 and 2202, 42 U.S.C. §1983 and 1988, and 20 U.S.C. §1681 et seq.  This suit is authorized and instituted pursuant to 42 U.S.C. Section 1983 and 1988, and 20 U.S.C.  Section 1681 et seq. ("Title IX"), and also asserts state law claims of invasion of privacy, outrage, assault and battery, negligent and/or wanton and malicious training, supervision and retention and false imprisonment, and loss of consortium under Alabama law.

## III. PARTIES

1.      Kristin Hurt is a female citizen of the United States over the age of nineteen and a resident of Shelby County, Alabama.

2.      **JANE DOE #1**, a resident of Shelby County, Alabama, is not *sui juris* by virtue of her minority. **JANE DOE #1's** MOTHER and **JANE DOE #1's** FATHER, individually, and as natural guardians and parents of **JANE DOE #1**, are residents of Shelby County, Alabama, and are over the age of 19 and are otherwise *sui juris*. This action is brought anonymously to protect the identities of **JANE DOE #1** and her mother and father as this matter concerns sexual assault of a minor. Jane Doe #1 was a student at Thompson Intermediate at all relevant times.

3

3. **JANE DOE #2**, is a resident of Shelby County, Alabama, and is not *sui juris* by virtue of her minority. **JANE DOE #2's** MOTHER and **JANE DOE #2's** FATHER, individually, and as natural guardians and parents of **JANE DOE #2**, are residents of Shelby County, Alabama and are over the age of 19 and are otherwise *sui juris*. This action is brought anonymously to protect the identities of **JANE DOE #2** and her mother and father as this matter concerns sexual assault of a minor. **JANE DOE #2** was a student at Thompson Intermediate at all relevant times.

4. **JANE DOE #3**, is a resident of Shelby County, Alabama, and is not *sui juris* by virtue of her minority. **JANE DOE #3's** MOTHER and **JANE DOE #3's** FATHER, individually, and as natural guardians and parents of **JANE DOE #3**, are residents of Shelby County, Alabama, and are over the age of 19 and are otherwise *sui juris*. This action is brought anonymously to protect the identities of **JANE DOE #3** and her mother and father as this matter concerns sexual assault of a minor. **JANE DOE #3** was a student at Thompson Intermediate at all relevant times.

5. **JANE DOE #4**, is a resident of Shelby County, Alabama, and is not *sui juris* by virtue of her minority. **JANE DOE #4's** MOTHER and **JANE DOE #4's** FATHER, individually, and as natural guardians and parents of **JANE DOE**

4

**#4**, are residents of Shelby County, Alabama and are over the age of 19 and are otherwise *sui juris*. This action is brought anonymously to protect the identities of **JANE DOE #4** and her mother and father as this matter concerns sexual assault of a minor. **JANE DOE #4** was a student at Thompson Intermediate School at all relevant times.

6.     **JANE DOE #5,** is a resident of Shelby County, Alabama is not *sui juris* by virtue of her minority. **JANE DOE #5's** MOTHER and **JANE DOE #5's** FATHER, individually, and as natural guardians and parents of **JANE DOE #5**, are residents of Shelby County, Alabama, are over the age of 19, and are otherwise *sui juris*. This action is brought anonymously to protect the identities of **JANE DOE #5** and her mother and father as this matter concerns sexual assault of a minor. **JANE DOE #5** was a student at Thompson Intermediate at all relevant times

7.     Defendant Shelby County Board of Education ("School Board") is an entity subject to suit under Title IX and 42 U.S.C. Section 1983.

8.     Defendant School Board is a political subdivision or agency of Shelby County, Alabama. Defendant School Board maintains Creek View Elementary School, Thompson Intermediate School, as well as thirty-seven other schools.

9. Defendants Lee Doebler and Steve Martin were members of the Shelby County School board and are being sued in their individual and official capacities and are subject to suit for prospective injunctive relief under 42 U.S.C. Section 1983.

10. Defendant Dan Acker ("Acker") was employed by Defendant School Board as a teacher and bus driver during the relevant time periods and is being sued in his individual capacity and is subject to suit under 42 U.S.C. Section 1983 and plaintiffs' state law claims.

## IV. FACTUAL ALLEGATIONS

## A. DANNY ACKER CONFESSED TO MOLESTATION FOR HIS OWN SEXUAL GRATIFICATION

11. Danny Acker was a teacher, school bus driver, and youth minister. Acker was a member of a longtime Alabaster family that has included a municipal water board chairman, a County Commissioner-elect, a Principal of the School of Technology, several educators, and present and former City Council members and sundays school teachers.

12. In 2012 Danny Acker, confessed to Alabaster police that he molested at least twenty (20) different girls for his own sexual gratification during his tenure with the Shelby County School Board.

13. On May 3, 2012, Danny Acker pleaded guilty to criminal charges of sexual abuse of a child less than twelve, a Class B and C felonies.

14. Defendant Acker admitted that in 1991 he subjected Kristen Hurt Lopez , who was an eleven year old fourth grade student in Acker's Creekwood Elementary School, to sexual contact by placing his hand under shirt and bra and caressing her right breast and that it was for his own sexual gratification.

15. Defendant Acker admitted that during 2004-2005 school year he subjected a fourth grade student at Thompson Intermediate School to sexual contact by standing behind her and pressing his penis into her back and holding her wrists in his classroom and for own sexual gratification.

16. Defendant Acker admitted that during May 2006 he subjected **JANE DOE #1**, who was a ten year old fourth grade student at Thompson Intermediate, to sexual contact in his classroom by placing his hand, rubbing her back, and squeezing her buttocks and that it was for own sexual gratification.

17. Defendant Acker admitted that during 2006 and 2007 school year he subjected **JANE DOE #1**, who was a fourth grade student at Thompson Intermediate School, to sexual contact in his classroom by grabbing and touching her breast.

18. Defendant Acker admitted that between August 2008 and May 2009 he subjected **JANE DOE #3**, who was an eleven year fourth grade student at

7

Thompson Intermediate School, to sexual contact by asking for a hug and placing his hand on her buttocks and rubbing it for his own sexual gratification.

19.   Defendant Acker admitted that between January and May 2009 he subjected **JANE DOE #2,** who was an eleven year old fourth grade student in his classroom, to sexual contact while in his fourth grade classroom at Thompson Intermediate School by fondling her breast and that it was for his sexual gratification.

20.   Defendant Acker admitted that during January and May 2009 he subjected **JANE DOE #2** to sexual contact by placing **JANE DOE #2's** hand on his penis during a school trip at the 4-H camp in Shelby County and that it was for his sexual gratification.

21.   Defendant Acker admitted that during January and May 2009 he subjected **JANE DOE #2** to sexual contact by fondling her vagina while the two were in his classroom at Thompson Intermediate School and that it was for his sexual gratification.

22.   On January 4, 2012, Defendant Acker admitted during an interview with Alabaster Police Department's lead investigator Grant Humphries that during his time as a teacher in the Shelby County School System he had sexually

molested over twenty female students by touching various body parts, including their buttocks for his own sexual gratification and that he could not remember their exact names.

**B.   KRISTIN HURT LOPEZ**

23.   Hurt was a member of Defendant Acker's fourth grade science and reading classes during the 1989-1990 school year.

24.   Throughout the 1989-1990 school year, Hurt was sexually abused by Defendant Acker, who would rub her lower back and buttocks when she came to his desk to ask questions.

25.   While Hurt was his fourth grade student Defendant Acker gave her a test asking "What color are Kristen's underwear?"

26.   Acker wrote a note to Hurt's mother which reads as follows:

> I thought the last question might need some explanation. Kristin came to me complaining about some boy trying to look up her dress while we were studying. I kidded her saying the boys must think I was going to have a question about her undewear since that was the only thing they were studying. I promise I'm not a pervert, I just have a strange sense of humor. I assure you this question was only on her copy of the test.
>
> /s/ D. Acker

27. In July 1990 Defendant Acker moved to 33 Eddings Lane Montevallo, Alabama, a house right across the street from Hurt's family. Acker continued to live across the street from Hurst throughout 1990 and 1991.

28. During the summer of 1991, Hurt and her brother were frequently alone in the house during the day. After initially being asked to check on the children on one occasion by Hurt's mother, Acker continued coming over once or twice per day to "check on" Hurt and her younger brother. On these visits, Acker would remain at the home for extended periods of time to "play" or watch television.

29. On August 6, 1991, Daniel Acker came over to "check on" the Hurt children. Hurt's brother and her friend were playing Nintendo in their room. Kristin was sitting on the couch watching TV.

30. Acker brought his daughter, then an infant. The baby was on Acker's lap and began to cry. After positioning the baby so that its foot was over his penis, Acker tried to get Hurt to play with the baby's foot.

31. Acker put his arm around Hurt, slipped his right hand under her shirt and bra and rubbed her breast. While fondling Hurt, Acker told her that he knew he should not be doing this, and he knew it was wrong. Acker asked Hurt not to tell anyone.

32.  At the time of this incident, Acker acknowledged touching Hurt, stating he and Hurt had been playing with the baby and he began tickling Hurt.  Acker claimed that he caught Hurt from falling from the couch by placing his arm across her chest. Acker further acknowledged that Hurt was upset and instructed her not to mention it anyone.  Acker has since admitted that he fondled Hurt for his own sexual gratification on this occasion.

33.  Hurt reported this incident to her mother the following morning.

34.  Acker attempted to enter Hurt's home, while her mother was not home.

## B.   ALABAMA DEPARTMENT OF HUMAN RESOURCES INVESTIGATES ACKER

35.  Kristin eventually told her mother about the molestation.

36.  In August 1991 Hurt's mother reported the allegations to the Department of Human Resources and the Sheriff's Office.

37.  Hurt's mother repeatedly contacted Shelby County District Attorney J. Michael Campbell's office in an attempt to get the case on the grand jury docket for possible prosecution, but was told that the DA's office would have to wait until the DHR hearing was finished before the matter could go to the grand jury.

38.  Danny Acker continued to teach while DHR investigated Hurt's allegations.

39.   During the DHR's investigation Acker admitted writing the question concerning the color of Hurt's panties.  Acker maintained that it was simply part of his usual pattern of interaction with students to make such jokes.

40.   During the investigation Hurt received substantial and widespread attention in her community and public sentiment was in Acker's favor, resulting in peer ridicule and rejection of Hurt.

41.   Acker put forth a theory that a neighborhood boy was in the Hurt house without permission and that Hurt fabricated or exaggerated the encounter with Acker to cover up her own misconduct.

42.   Furthermore, during DHR's investigation, Acker called two children as alleged witnesses to testify to Hurt's subsequent "promiscuous" conduct.

43.   DHR found that the preponderance of the evidence showed that Hurt was sexually abused and that abuse was perpetrated by Danny Acker at Lopez's residence on August 6, 1991 and that

> [t]he circumstances in which the touching occurred and the nature of the touching indicated that the act was perpetrated for the sole purpose of generating sexual pleasure for Danny Acker; the evidence shows the touching was not accidental, nor did Danny Acker have a legitimate medical or hygenic purpose for touching Kristin's breast. The touching of Kristin Lopez''s breast constitutes an act of child abuse as defined by the Code of Alabama and the Department of Human Resources' administrative Code.

> The findings of the hearing should be entered in the central register in order to protect children whose health and welfare may be adversely affected by Acker's regular and substantial contact with children.

## C.   SHELBY COUNTY SCHOOL BOARD

44.   The DHR Final Hearing Decision was disclosed to Dr. Norma Rogers, Shelby County Superintendent of Education, in a letter dated October 14, 1992.

45.   The October 14, 1992 DHR Letter provides that pursuant to Department of Human Resources Administrative Rule 660-5-34-(4)(j)(7), "the content of the investigation of reports of suspected child abuse/neglect where school personnel are the alleged perpetrators must be furnished in writing to the School Board on all indicated reports after the department investigative is waived or held' . . . This disclosure of information is being made to the Shelby County School Board pursuant to Code of Alabama 1975, 26-14-8, *to prevent or discover* child abuse or neglect." *emphasis added.*

46.   Additionally, the October 14th letter provides "A founded determination has been entered into the State Central Registry."

47.   Initially, the school board issued an intent to fire Acker in October 1992.

## D.   GRAND JURY

48. In November 1992, after the DHR's decision, the case against Acker was presented to the Grand Jury.

49. As a result of the publicity generated by Acker's smear campaign, Kristin was asked by one grand juror if she realized that she was ruining a man's life.

50. The grand jury returned a verdict of "no bill" and Acker was not prosecuted.

**E.   THE SHELBY SCHOOL BOARD ACKER REINSTATED TEACHER**

51. Superintendent Norma Rogers recommended that Acker not be reinstated a teacher of Creek View Elementary.

52. At the time of Acker's reinstatement, the Shelby County School Board members included:

  (1)   Lee Doebler, Ph.D., President

  (2)   Susan Bagley, Vice President

  (3)   Cindy Forrester

  (4)   Steve Martin

  (5)   Donna Morris

53. Of the School Board Members at the time of Acker's reinstatement, two remained on the School Board through 2012. Steve Doebler is the Board's President. Steve Martin is currently the Vice President of the Shelby County School Board.

54. On February 8, 1993 during a closed door School Board hearing, a member of the board accused Hurt of fabricating the story and picking it up from Oprah. The Board voted to reinstate Acker.

55. President Lee Doebler wrote a letter dated May 20, 1993, in response to a concerned parent's letter protesting Acker's reinstatement.

56. Doebler's letter provides:

"In fact, Mr. Carpenter, if you recall, you and I talked on the phone about 2 weeks before the hearing. At that you told me 2 other girls had come forward with charges against Mr. Acker. I urged you to make those names available to Mr. Sweeney. I understand that Mr. Sweeny's office made extensive efforts to identify these witnesses. They were not available."

57. Additionally in this letter Doebler states "My colleges and I read the DHR report and listened to all 8 ½ hours of testimony" and acknowledged that DHR found "reason to suspect" child abuse.

58. Doebler states that he has "never made a decision based on politics . . . If I run again, it will certainly be your privilege to vote and/or campaign against me. If I win, I will continue serving exactly as I have been; if I lose, someone else can have the headaches . . . We did not have the luxury of making our decision

based on the phantom claims of knowing numerous children had the same experience. Those children, if they exist, did not come forward to testify."

## F.    HURT'S PUBLIC HUMILIATION

59.    As a result of Acker's smear campaign, Hurt was bullied relentlessly following the public inquiry into her allegations. To escape the bullying, she transferred school districts. However, she still lived across the street from Acker and had to deal with seeing him every day.

60.    Eventually, Hurt and her family moved to a different county. For most of her life, Hurt has required psychological treatment as a result of the abuse she experienced and as a result of Acker's smear campaign that led to her being ostracized from the community.

61.    Starting in 2006, Hurt worked at the Publix in Pelham, where Acker would frequently show up. Hurt experienced panic attacks when Acker showed up at Publix, and she once again sought treatment from a psychiatrist.

62.    On January 3, 2012, Hurt received a phone call from the Alabaster police department asking her to discuss the abuse she experienced at Acker's hands.

63.    On January 4, 2012, Acker confessed to Alabaster Police Department Investigator Grant Humphries to touching Kristin Hurt's breast and fondling her for his own sexual gratification in 1991.

64.  Acker also confessed to Investigator Humphries that he had repeatedly lied in his statements during the first investigation, that he knew he was wrong, and that he believed himself to be guilty.

65.  On May 3, 2012, Acker pled guilty to criminal charges that he molested Kristin Hurt in 1991.

**G.  JANE DOE #1**

66.  When interviewed by Investigator Humphries in 2012, Acker stated that he couldn't remember the names of all the students that he touched, but that he had, indeed, touched over twenty female students and had touched them on various body parts, including their buttocks, and that when he did so it was for his own personal sexual gratification. Acker told Investigator Humphries that he had touched female students inappropriately over his period of time as a teacher in the Shelby County School system.

67.  During the 2005-2006 school year Acker's classroom was in a corner of the school and he worked as a bus driver.

68.  In May of 2006, **JANE DOE #1** was a ten-year-old student in Daniel Acker's classroom, just finishing up her fourth grade year.

69.  About five or six days before the end of the school year, Acker called **JANE DOE #1** to his desk while the rest of the students were reading. Acker was

17

entering grades in his computer. When **JANE DOE #1** commented on how fast Acker was able to type, Acker put his hand on her back and began rubbing it, then moved his hand lower and grabbed her buttock.

70. **JANE DOE #1** recalls that Acker frequently called female students to chalkboard and held their wrist as he stood behind them. **Jane Doe #1** recalls him pressing his penis against her.

71. **JANE DOE #1**'s parents knew about Hurt's report of sexual abuse, subsequent smear campaign and ostracization.

72. **JANE DOE #1**'s parents removed Jane Doe from Acker's class for the remainder of the year.

73. On May 3, 2012, Acker pled guilty to criminal charges that he molested **JANE DOE #1** in May, 2006.

**H.   JANE DOE #2**

74. The following school year, in December 2006, **JANE DOE #2** was a fourth grader at Thompson Intermediate School. Danny Acker was her homeroom teacher.

75. In December, 2006, when **JANE DOE #2** was alone with Acker, Acker touched her breast. **JANE DOE #2** reported the touching to her mother.

76. On December 14, 2006, in an IEP (Individualized Education Plan) meeting with Acker and Annie Sexton, **JANE DOE #2** s Academic Enrichment Teacher, **JANE DOE #2's mother** reported to Acker and Ms. Sexton what **JANE DOE #2** had told her about Acker touching her breast.

77. Acker denied the allegations. He told **JANE DOE #2's mother** that he was the Youth Director at Westwood Baptist Church and that he would never do anything like that–but if he did, he was sorry and would not do it again. Ms. Sexton likewise stated that Acker would not do that to a child.

## I.   JANE DOE #3

78. In 2008, **JANE DOE #3** was an eight-year-old in Danny Acker's fourth grade class.

79. One day, **JANE DOE #3** failed a reading test on the computer. **JANE DOE #3** asked Acker if she could re-read the book and then take the test again. Acker sent her into the hall to re-read; about ten minutes later, he called her to the desk and told her that he was going to help her.

80. Acker took **JANE DOE #3** by the upper arm and sat her on his lap. He put his hand on her leg and pulled up the test on the computer. **JANE DOE #3** answered the first few question herself; then Acker took the mouse and began answering the test questions for her.

19

81. At the point when Acker began answering the questions for her, **JANE DOE #3** felt Defendant Acker's erect penis pressing against her.

82. After returning from lunch that day, Acker pulled **JANE DOE #3** aside and told her not to talk about what had happened, that she was his favorite and he didn't want her to mess it up.

83. Next, at the end of the February, Acker showed a movie, the Chronicles of Narnia, to the fourth grade class. **JANE DOE #3** was sitting in the last row, and Acker had positioned himself directly behind her.

84. **JANE DOE #3** felt her desk begin to move backward. She realized that Acker had hooked his feet around the legs of her chair and was pulling her toward him.

85. Acker started rubbing her back on top of her shirt, and after a while moved his hands under her shirt and tank top. Then he took his hands out of her shirt and began rubbing down her pants, including penetrating her anus with his finger.

86. On other, similar occasions when the class watched movies Acker would sit behind **JANE DOE #3** and touch her under her clothes; on one such occasion, Acker penetrated her vagina with his finger.

87. One day Acker pulled **JANE DOE #3** out of Physical Education class, telling the PE teacher that she needed to go back in with him to re-do a test. In the

classroom, Acker sat **JANE DOE #3** down and told her that he was sorry he'd touched her. He said, "That's for you and your [future] husband, and I'm going to stop right now," or something to that effect.

88. However, Acker did not stop. In April, **JANE DOE #3** was at 4H camp, which Acker was also attending as a counselor. **JANE DOE #3** was looking for the basketball court, and Acker offered to take her. While walking her to the basketball court, Acker stopped her, grabbed her hand, and put it on his penis between his pants and his boxer shorts.

89. Following this occasion, Acker again sat behind **JANE DOE #3** and touched her while showing a movie, putting his hand up her shirt and down her pants.

**J.    JANE DOE #4**

90. During the 2008-2009 school year, Acker also worked as a bus driver. Acker was **JANE DOE #4**s fourth grade teacher and also the bus driver who drove her home each day.

91. When **JANE DOE #4** got off the bus, Acker would hug her. During one of these hugs, he put his hand on her buttock.

92. Acker retired from teaching after the 2008-2009 school year, though he was only in his mid-forties. However, he continued to work for the school system as a bus driver.

## IV.    CAUSES OF ACTION

### A.    COUNT ONE -- TITLE IX

93.    The plaintiffs adopt and re-allege Paragraphs 1-92 above as if fully set forth in full herein.

94.    This is a claim to redress unlawful discrimination on the basis of sex in violation of Title IX, 20 U.S.C. Section 1681 et seq. against the School Board.

95.    At all times relevant hereto, the School Board received federal funds.

96.    Acker constantly and continuously harassed the plaintiffs on the basis of their sex. The harassment was unwelcome and was sufficiently severe and pervasive so as to alter the conditions of their education and create a sexually hostile educational environment. The sexual harassment Plaintiffs endured undermined and detracted from Plaintiffs' educational experience, so that they were effectively denied equal access to educational resources and opportunities.

97.    Lee Doebler in his position as president of the School Board had authority to address the alleged sexual harassment and to institute corrective measures to end it.

98.    Steve Martin as a member of the School Board had the authority to address the alleged sexual harassment and to institute corrective measures to end it.

99.  Lee Doebler and, Steve Martin had actual and constructive knowledge of ACKER's sexual harassment of the children.

100.  Lee Doebler and Steve Martin acted with deliberate indifference to the sexual harassment when each failed to take prompt remedial action despite their duty to stop the sexual harassment and abuse.

101.  Through the acts of its agents Lee Doebler and Steve Martin the School Board acted with deliberate indifference to the sexual harassment by failing to take prompt remedial action.

102.  Upon learning of the sexual harassment, the School Board acted with deliberate indifference to the sexual harassment by failing to take prompt remedial action.

103.  By knowingly permitting the hostile environment to exist, the defendants discriminated against the plaintiffs and denied them the benefits of a public education in violation of Title IX.

104.  Lee Doebler and Steve Martin and the School Board had the authority to initiate corrective measures in regard to the harassment but failed to do so.

105.  The defendants were deliberately indifferent to Acker's misconduct.

106.  The defendants engage in a pattern or practice of such conduct as alleged by the plaintiffs.

107. The School Board and its officials have not promulgated or distributed an official grievance procedure for lodging sexual harassment complaints; nor have they issued a formal anti-harassment policy.

108. Because of the sexual harassment and the defendants' failure to appropriately handle the complaints of sexual harassment, the plaintiffs have suffered severe emotional distress, embarrassment and humiliation.

**B.      COUNT II – SUBSTANTIVE DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, AND 42 U.S.C. SECTION 1983 - AGAINST DEFENDANT SCHOOL BOARD AS A RESULT OF OFFICIAL POLICY OR CUSTOM OF FAILING TO PREVENT AND REMEDY SEXUAL ABUSE.**

109. The plaintiffs adopt and reallege Paragraphs 1-111 above as if fully set forth herein.

110. This Count is brought against the School Board and its members in their official capacity.

111. Plaintiffs had a constitutional right not be sexually abused while in the care of Defendant School Board. Specifically, Plaintiffs had a constitutional substantive due process interest to bodily integrity and the right to equal protection of the law to be free of harassment based on their sex.

112.   The School Board had an affirmative constitutional duty to protect Plaintiffs'

right to bodily integrity, including protection from sexual abuse by one of its

employees or agents, and their right to be free of harassment based on their sex.

113.   The School Board was at all relevant times a final policymaker, with authority

to make a decision and/or adopt a course of action in response to each the

complaints against Acker.   At all relevant times, the School Board and its

members acted under color of state law.

114.   Upon information and belief, at all relevant times Defendant School Board had

a longstanding policy, practice or custom of failing to prevent and remedy

sexual abuse, including lax investigation and non-response to information that

an employee or agent has a dangerous sexual propensity toward students.

115.   Upon information and belief, the School Board delegated its authority to

investigate and its discretion to respond to allegation of teacher-on-student

sexual assault to the School Board's Attorney and staff. The attorney and staff

were delegated complete discretion and authority to investigate and respond to

allegations of sexual abuse.

116.   The School Board acted with deliberate indifference in the gross failure to

adequately investigate the allegations against Acker.

117. The School Board's policy , practice, or custom is also reflected by the School Board's failure to take any remedial action in response to complaints in 1991 against Acker, including: (1) failing to remove Acker from authority and control of students; (2) failing to impose any restriction whatsoever on Acker's access to children; and (3) failing to monitor Acker when they allowed him back in the classroom.

118. The policy, practice, or custom of non-response to the prior complaints manifested deliberate indifference to the obvious consequences that Acker would continue to sexually harass students.

119. As a result of official policy or custom manifesting deliberate indifference, the School Board violated Plaintiffs' constitutional right to bodily integrity and to be free of harassment based on their sex.

120. The policy or custom of the School Board was the moving force of the violation of Plaintiffs' constitutional rights.

121. As a result of the School Board's policy, practice or custom manifesting deliberate indifference, Plaintiffs were sexually assaulted by Acker, which has caused them to suffer damages.

WHEREFORE, Plaintiffs demand judgement for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. 1988, and such other relief as this Court deems just and proper.

**C.   COUNT III – VIOLATION OF 42 U.S.C. 1983 - DEFICIENT SUPERVISION AND TRAINING CAUSING VIOLATIONS OF SUBSTANTIVE DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT- AGAINST DEFENDANT SCHOOL BOARD**

122.   Plaintiffs repeat and re-allege the allegations set forth in paragraph 1 through 124 above.

123.   This count is brought against the School Board and its members in their official capacities.

124.   The School Board failed to adequately supervise and train its employees despite having notice of the need to do so.

125.   Among other failures, Acker was allowed to be in situations where he was alone in the classroom, school sponsored events, and school bus with Plaintiffs, and the School Board failed to monitor Acker's interactions with students despite knowing of the allegations raised by Hurt and others and the DHR's finding of reason to suspect child abuse.

126.   Additionally, the School Board's training regarding processing reports, investigation, and response to complaints of sexual harassment and abuse were

27

wholly inadequate. The School Board's supervision and training practices were not calculated or designed to protect children from sexual harassment and abuse.

127. Failure to adequately train and supervise with regard to the risks of sexual harassment and abuse upon students was an official policy or custom of the School Board.

128. The School Board was deliberately indifferent to the constitutional rights of children to bodily integrity and their rights to be free of harassment based on their sex in adopting its supervision and training practices.

129. The School Board's failure to train or supervise reflects deliberate indifference or conscious choice.

130. The foregoing deficiency in the School Board's training and supervision practices caused Plaintiffs to be sexually assaulted by Acker and suffer damages.

WHEREFORE, Plaintiffs demand judgment for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. 1988, and such other and further relief this Court deems just and proper.

**D.    COUNT IV– VIOLATION OF 42 U.S.C. 1983 AGAINST SCHOOL BOARD MEMBERS IN INDIVIDUAL AND OFFICIAL CAPACITIES.**

131. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 133 above.

132. This claim is brought against School Board President Lee Doebler and School Board members and Steve Martin in their individual and official capacities.

133. School Board President Lee Doebler and School Board members and Steve Martin had actual knowledge of the abuse experienced by Plaintiffs but failed to take action.

134. In violating the plaintiff's protected rights protected by the Substantive Due Process and Equal Protection clauses of the Fourteenth Amendment, the Defendants Lee Doebler and, Steve Martin acted under the color of state law.

135. The effect of the sexual harassment and the failure to remedy the harassment, as outlined above, has deprived the plaintiffs of their statutory and constitutional rights granted by the Substantive Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title IX, and 42 U.S.C. Section 1983.

136. The plaintiffs have a constitutional right to be free from sexual harassment and abuse in public schools.

137. The sexual harassment inflicted upon the plaintiffs included, but was not

29

limited to, unwanted touchings of a sexual nature, and was sufficiently severe or pervasive to alter the conditions of their education.

138.   The School Board, through its officials, had actual constructive knowledge and knew or should have known about the harassment.

139.   The defendants engaged in a pattern or practice of such conduct as alleged by the plaintiffs.

140.   Lee Doebler and Steve Martin are officials whose failure to take corrective action against Acker constitutes a policy or custom of the School Board, manifesting deliberate indifference and resulting in violations of Plaintiff's constitutional rights and injury to Plaintiffs.

141.   The inaction of Lee Doebler and Steve Marti in response to the harassment by Acker amounted to a violation of the plaintiffs' right to Equal Protection resulting in injury to Plaintiffs.

142.   The inaction of Lee Doebler and Steve Martin in response to the harassment by Acker caused a constitutional injury to the plaintiffs by infringing on their Substantive Due Process rights, resulting in injury to Plaintiffs.

143.   Lee Doebler and Steve Martin are officially and individually liable under 42 U.S.C. Section 1983 because a casual connection exists between their acts and the plaintiffs' constitutional violations.

144. Acker's sexual harassment of students was so widespread and obvious as to put a responsible supervising official, such as Lee Doebler and Steve Martin on notice of the need to correct the abuse, supervise, and provide training, but they failed to do so.

145. As noted above, the School Board's customs or policies instituted or ratified by Lee Doebler and Steve Martin manifested deliberate indifference to the plaintiffs' constitutional rights and resulted in injury to Plaintiffs.

146. Lee Doebler and Steve Martin are individually liable under 42 U.S.C. Section 1983 for Acker's sexually harassment of the plaintiffs.

147. The defendants engaged in the misconduct alleged herein with malice and/or reckless indifference to the plaintiffs' federally protected rights.

## E.   COUNT V -- INVASION OF PRIVACY

148. The plaintiffs adopt and re-allege Paragraphs 1-150 above as if fully set forth herein.

149. This claim is brought against defendant Lee Doebler, Steve Martin  and the School Board.

150. Acker invaded the privacy of the plaintiffs by, among other things, invading

their personal space by touching private places of their body including their breasts, buttocks, anus, and vagina, which amounted to an invasion of privacy of the plaintiffs.

151. Because of such conduct, the plaintiffs suffered severe emotional distress, embarrassment and humiliation.

152. Acker, Lee Doebler, Steve Martin, and the School Board acted with malice and/or reckless indifference toward the plaintiffs.

**F.   COUNT VI -- ASSAULT AND BATTERY**

153. The plaintiffs adopt and re-allege Paragraphs 1-155 above as if fully set forth herein.

154. This claim is brought against Acker, Lee Doebler, Steve Martin, and the School Board.

155. Acker subjected the plaintiffs to numerous unwanted touchings, including unwanted touchings in private places on their bodies such as their breasts, buttocks, anus, and vagina.

156. Lee Doebler, Steve Martin, and the School Board authorized, ratified and/or condoned its agent's actions which amounted to an assault and battery of the plaintiffs.

32

157. Because of such conduct, the plaintiffs suffered severe emotional distress, embarrassment and humiliation.

158. The defendants acted with malice and/or reckless indifference toward the plaintiffs.

## G.   COUNT VII-- OUTRAGE

159. The plaintiffs adopt and re-allege paragraphs 1-161 above as if fully set forth herein.

160. This claim is brought against Acker, individually; Lee Doebler, Steve Martin, individually, for their knowing ratification of the actions of Acker, and the School Board.

161. The defendants outrageously and intentionally inflicted emotional distress upon the plaintiffs by subjecting them to abusive and harmful touchings and by using sexually abusive, profane, insensitive and unprofessional language toward the plaintiffs.

162. The defendants have caused the plaintiffs severe emotional distress by, among other things, subjecting them to unwanted touching of private areas of their bodies and by inserting his finger into a vagina and/or an anus.

163. The conduct described above was extreme, outrageous and beyond the boundaries of decency in a civilized society.

164. Defendants caused the plaintiffs severe emotional distress by refusing to take corrective action once notified of the harassing conduct.

165. The School Board authorized, ratified and/or condoned its agent's actions which caused the plaintiffs severe emotional distress.

166. Defendants Lee Doebler, Steve Martin and the School Board ratified the conduct of Acker, in that he had actual knowledge of Acker's conduct, knew or should have known such conduct constituted sexual harassment, and failed to take adequate steps to remedy the situation.

167. Because of such conduct, the plaintiffs suffered severe emotional distress, embarrassment and humiliation.

168. The defendants acted with malice and/or reckless indifference toward the plaintiffs.

## H. COUNT VIII - NEGLIGENT AND/OR WANTON AND MALICIOUS TRAINING, SUPERVISION AND RETENTION

169. The plaintiffs adopt and reallege Paragraphs 1-171 above as if fully set forth herein.

170. This claim is brought against the School Board.

171. The School Board, through its agents, maliciously, deliberately, wantonly and/or negligently retained Acker and failed to supervise, monitor and/or train

its employees and, as a result, students such as the plaintiffs suffered from the illegal treatment described in this complaint.

172. The School Board was negligent and/or wanton in supervising, training, and/or retaining its employees, including defendants Lee Doebler, Steve Martin, and the School Board in that the School Board knew, or should have known, that Acker was engaging in sexual harassment and abuse against the plaintiffs and other minor students.

173. The School Board negligently retained Acker after the Hurt and others reported his sexually harassing conduct. By its action, the School Board ratified and/or condoned Acker's sexual harassment of the plaintiffs and other students.

174. The School Board had actual knowledge Acker's conduct, knew or should have known that such conduct constituted sexual harassment, and failed to take adequate steps to remedy the situation.

175. The School Board retained Acker as an employee after it had knowledge of Acker's sexually harassing conduct.

176. The School Board failed to adequately remedy the situation regarding the harassment of the plaintiffs by defendant Acker.

177. Because of such conduct, the plaintiffs suffered severe emotional distress, embarrassment and humiliation.

178. The School Board acted with malice and/or reckless indifference toward the plaintiffs.

## I.   COUNT IX -- FALSE IMPRISONMENT

179. The plaintiffs adopt and reallege Paragraphs 1-181 above as if fully set forth herein.

180. This claim is brought against the School Board and Acker.

181. The School Board had previous knowledge of Acker's inappropriate conduct with his students and continued to employ him, thereby disregarding the rights and safety of the plaintiffs.

182. Acker unlawfully directly detained and restrained the plaintiffs and deprived them of their personal liberty.

183. Acker used force, along with express and implied threats of force, to deprive the plaintiffs of their personal liberty, compelled them to remain where they did not wish to remain, and compelled them to go where they did not wish to go.

184. Acting in his capacity as a teacher to demand the plaintiffs accompany him, Acker's actions fell within the line and scope of his employment; therefore, the School Board is legally liable for Acker's acts of false imprisonment.

185. Because of such conduct, the plaintiffs suffered severe emotional distress, embarrassment and humiliation.

186. Defendants acted with malice and/or reckless indifference toward the plaintiffs.

## J.   COUNT X – LOSS OF CONSORTIUM

187. The plaintiffs adopt and reallege Paragraphs 1-190 above as if fully set forth herein.

188. As a result of Defendants' violation of plaintiffs' common law and constitutional rights, Plaintiffs' mothers and fathers have suffered and will suffer damages, including loss of comfort, companionship and society, and pecuniary losses, consisting of, without limitation, care and treatment of plaintiffs and loss of earnings arising therefrom.

189. The Defendants' acts and omissions were the direct and proximate cause of plaintiffs suffering a permanent and total disability.

## V.   DAMAGES

190. Plaintiffs have suffered embarrassment, humiliation, shame, damage to reputation, mental distress, physical injuries, emotional and physical pain and anguish as a consequence of Defendants' unlawful conduct.

191. Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment, injunctive relief, and compensatory and punitive damages is their only means of securing adequate relief.

192.   Plaintiffs are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1.   Issue a declaratory judgment that the policies, practices, procedures, conditions and customs of Defendants are violative of the rights of Plaintiffs as secured by the Fourth, and Fourteenth Amendments of the U.S. Constitution

2.   Grant Plaintiffs a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys and those acting in concert with Defendants and at Defendants' request from continuing to violate the Fourth and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. Section 1983 and 20 U.S.C. Section 1681 et seq. ("Title IX").

3.   Enter an Order requiring Defendants to make Plaintiffs whole by awarding them compensatory damages, punitive damages[1], and nominal damages.

4.   Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

---

[1]Plaintiff only seeks punitive damages against individually named Defendants.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.**

Respectfully submitted,

Jon C. Goldfarb asb-5401-F58J
Rachel McGinley
Daniel E. Arciniegas asb-7809-d67a
L. William Smith asb-8660-A61S
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500


**DEFENDANTS' ADDRESSES:**
Shelby County School Board
c/o Aubrey Miller, President
PO Box 1910
410 East College Street
Columbiana, AL 35051

Steve Martin
c/o Shelby County School Board
PO Box 1910
410 East College Street
Columbiana, AL 35051

Dan Acker
c/o Bullock Correctional Facility
Highway 82 East

39

Union Springs, Al 36089

Lee Doebler
106 Old Spanish Trail
Alabaster, AL 35007-7431