FILED
2014 Aug-21  PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRISTIN HURT, et al,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:13-CV-230-VEH** |
| | ) | |
| **SHELBY COUNTY BOARD OF** | ) | |
| **EDUCATION, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Before the court is a Motion for Class Certification under Federal Rule of Civil Procedure 23. Doc. 27. The plaintiffs seek to certify an unnumbered class of female students who matriculated through the Shelby County public school system during the roughly twenty-five year period one of the defendants, the Shelby County Board of Education, employed another of the defendants, Daniel M. Acker, Jr., as a teacher and school bus driver. The plaintiffs specifically ask this court to certify a class encompassing the following definition:

> Any current or former female student during the time period that Dan Acker worked for Shelby County School Board who was either injured, sexually harassed, abused or molested by Dan Acker or who witnessed such conduct or who was exposed to a sexually hostile educational environment through

Acker's conduct.

*Id.* at 2. The named defendants include not only the Shelby County Board of Education and Mr. Acker but also Dr. Lee Doebler, PhD, and Steven Martin, who were members of the Board during the events in question.

As explained more fully below, the court finds several infirmities with the plaintiffs' proposed class definition. First, the putative class is not sufficiently ascertainable. The proposed definition employs conclusory language to identify certain class members – that is, it uses legal terminology whose application is linked to the ultimate merits of this case. Class eligibility would (at least partially) hinge on finding that any given plaintiff had a viable claim against Mr. Acker. The class definition is thus impermissibly "fail-safe." Although the plaintiffs could potentially revise the definition to eliminate this discrepancy, it would jeopardize their ability to meet Rule 23's numerosity requirement.

This is not the plaintiffs' only problem here. Even were the putative class ascertainable, the class lacks the required commonality to sustain certification. Although the class plaintiffs possesses certain similarities, their essential contentions against the defendants vary in certain material respects. Likewise, the named plaintiffs' claims are not adequately typical of those that other class members would hypothetically allege. While the named plaintiffs all claim to be victims of Mr.

Acker's molestation, the class they purport to represent would include an expansive pool of female students who were not even aware of Mr. Acker's predatory conduct. For all of these reasons, Rule 23 therefore dictates that the court **DENY** certification.

## STATEMENT OF THE CASE

### I.     **Factual Background**[1]

Kristen Hurt and the four other anonymous plaintiffs were, at one point or another relevant to this action, fourth grade students at elementary schools within the Shelby County public school system. The Shelby County Board of Education ("the Board") operates public schools within Shelby County, Alabama. Mr. Acker was an elementary school teacher and school bus driver within that school system from approximately 1984 to 2009.[2] He taught all of the plaintiffs fourth grade at various points during that time period.

In late 1991, Ms. Hurt[3] (through her mother) complained to the Alabama Department of Human Resources ("DHR") that Mr. Acker had molested her. In a

---

[1] The following summation contains only those facts relevant to the certification issue at hand and upon which the parties have been able to agree at this point in the litigation. They do not represent formal findings and are not binding on the parties.

[2] It is unclear from the record what the nature of Mr. Acker's employment relationship was with the Board after 2009. There is some indication he continued to work as a school bus driver. However, he unquestionably retired from teaching in 2009.

[3] At that time, Ms. Hurt was known as Kristen Hurt Lopez. *See, e.g*, Doc. 10 at 8. Because she chooses to be identified as Kristen Hurt in the present action, the court will refer to her throughout this opinion as Ms. Hurt.

formal report it issued on the subject, the DHR found that:

> [t]he circumstances in which the touching occurred and the nature of the touching indicated that the act was perpetrated for the sole purpose of generating sexual pleasure for Danny Acker; the evidence shows the touching was not accidental, nor did Danny Acker have a legitimate medical or hygenic purpose for touching [Ms. Hurt's] breast. The touching of [Ms. Hurt's] breast constitutes an act of child abuse as defined by the Code of Alabama and the [DHR's] administrative Code. The findings of the hearing should be entered in the central register in order to protect children whose health and welfare may be adversely affected by Acker's regular and substantial contact with children.

At some point afterward, Dr. Norma Rogers, Shelby County Superintendent of Education, learned of this report. On October 14, 1992, the DHR released a letter indicating that – under its Administrative Rule 660-5-34(4)(j)(7) – the following would occur:

> the content of the investigation of reports of suspected child abuse/neglect where school personnel are the alleged perpetrators must be furnished in writing to the School Board on all indicated reports after the department investigative [sic] is waived or held . . . This disclosure of information is being made to the Shelby County School Board pursuant to Code of Alabama 1975, 26-14-8, to prevent or discover child abuse or neglect.

The letter also provided, "A founded determination has been entered into the State Central Registry." The Board noticed an intent to consider cancellation of Mr. Acker's employment at around that time.

On February 8, 1993, the Board conducted a hearing where they heard evidence regarding Mr. Acker's alleged sexual misconduct against Ms. Hurt.  At that time, the

Board including Dr. Doebler (as President), Susan Bagley (as Vice President), Cindy Forrester, Steven Martin, and Donna Morris. After several hours – in the early morning of February 9, 1993 – the Board voted not to terminate Mr. Acker. He consequently returned to work as a teacher within the Shelby County school system.

On January 4, 2012, Mr. Acker admitted to police investigators that he molested over 20 different girls for his sexual gratification during his employment within the Shelby County school system. This included the admission that in 1991 he subjected Ms. Hurt, who was an eleven-year old fourth-grade student in his Creekwood Elementary School class, to sexual contact for such personal gratification. He also admitted to a similar incident in 2004-05 with a fourth grade student at Thompson Intermediate School. Other than Ms. Hurt, he could not remember the exact names of the other children he molested. On May 3, 2012, he plead guilty to eight counts of criminal sexual abuse of a child less than twelve, which constitute Class B and C felonies.

## II.    Procedural Background

The plaintiffs filed a Class Action Complaint on February 1, 2013. Doc. 1. In this Complaint, they accused Mr. Acker of sexually molesting and/or sexually harassing them in various ways and in various circumstances over the many years he was employed as a teacher and school bus driver within the Shelby County public

school system. *Id.* at 6-11, 17-21.[4] They further accused the Board, Mr. Doebler, and Mr. Martin of failing to take appropriate corrective measures to protect them and other students after learning of Ms. Hurt's accusation that Mr. Acker molested her in 1991. *Id.* at 13-17. They specifically faulted the Board for reinstating his employment after the DHR found a preponderance of evidence showing that Mr. Acker sexually abused Ms. Hurt and after the DHR added him to a central registry of sex offenders. *Id.* The Complaint enumerated ten counts against the defendants. *Id.* at 22-38. These counts included allegations of sex discrimination in violation of Title IX of the 1972 Education Amendments, 20 U.S.C. §§ 1681-1688; various violations of the plaintiffs' rights under 42 U.S.C. § 1983; invasion of privacy; assault and battery; outrage; negligent and/or wanton training, supervision, and retention; false imprisonment; and loss of consortium. *Id.*

On February 8, 2013, the plaintiffs filed their First Amended Class Action Complaint ("the Amended Complaint"). Doc. 10. The Amended Complaint did not alter the counts alleged by the plaintiffs. Instead, its only major substantive revisions appeared to be the following:

---

[4]The paragraph numbering within the plaintiffs' Class Action Complaint (and, later, the Amended Class Action Complaint) was frequently inconsistent. *See, e.g.*, Doc. 1 at 2; Doc. 10 at 2. All citations to the record in this opinion therefore employ the numbering system applied by the Case Management/Electronic Case Files (CM/ECF) system.

- the removal of "Jane Doe #5" as a plaintiff, *compare* doc. 1 at 5 *with* doc. 10 at 4-5;

- the addition of a section outlining the plaintiffs' "Class Action Allegations," doc. 10 at 6-8;

- the clarification of certain dates and details surrounding Mr. Acker's alleged 1993 reinstatement, *id.* at 15-18;

- a description of the alleged harm Ms. Hurt suffered as a result of Mr. Acker's abuse and the resulting public fallout from her accusation, *id.* at 18-20; and

- the alteration of the plaintiffs' Prayer for Relief to delineate the nature of their compensatory damages request, *id.* at 40-41.

Mr. Acker answered on March 7, 2013 (doc. 16), and the other defendants separately answered on March 27, 2013 (doc. 17). Each Answer raised several affirmative defenses. The plaintiffs filed the present Motion for Class Certification on October 15, 2013. Doc. 27. The defendants responded in opposition on December 4, 2013. Doc. 34. The plaintiffs replied on December 20, 2013. Doc. 40.

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 23 governs Motions for Class Certification. Fed. R. Civ. P. 23. The plaintiffs specifically invoke Rule 23(b)(3) to justify their present Motion. Moreover, they are exclusively seeking certification as to their Title IX sex discrimination claim. By way of framing its analysis below, the court will therefore outline the legal standards dictated by these various provisions.

## I.     Rule 23

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, ___, 131 S. Ct. 2541, 2550-52 (2011) (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). A plaintiff seeking class certification therefore "bears the burden of satisfying all implicit and explicit requirements of Federal Rule of Civil Procedure 23." *Bussey v. Macon County Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (unpublished) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003)). Put more specifically, "[f]or a district court to certify a class action, the named plaintiffs must have standing and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc*., 382 F.3d 1241, 1250-51 (11th Cir. 2004) (citing *City of Hialeah v.  Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001)) (footnotes

omitted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

### A.    *Threshold Requirements*

The first threshold requirement is that any and all named plaintiffs have standing. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]nalysis of class certification must begin with the issue of standing." ); *see also Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1283 n.20 (11th Cir. 2001) (citing *Bowen v. First Family Fin. Servs., Inc*., 233 F.3d 1331, 1339 n.6 (11th Cir. 2000)) ("[T]he fact that this suit was brought as a class action does not alter [the proposed class representative's] obligation to show that he individually satisfies the constitutional requirements of standing.").

Standing is, in fact, particularly important with class actions. Before the court even assesses whether the named plaintiffs' claims and the class claims will share common questions, it first must decide whether the plaintiffs have a cognizable claim at all. Because an issue of Article III standing "directly implicates federal subject matter jurisdiction," the court must address it first. *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citation omitted). In this action, the defendants do not challenge the named plaintiffs' constitutional standing to pursue the present action. Moreover, the court, in independently

reviewing the record, has not identified any standing problems or other "case or controversy" concerns (e.g., ripeness or mootness) that would preclude the named plaintiffs from serving as class representatives. Therefore, no Article III obstacles exist to prevent this case from proceeding as a class action.

Another threshold requirement Rule 23 implies is that the plaintiffs' proposed class be "adequately defined and clearly ascertainable." *Bussey*, 562 F. App'x at 787 (unpublished) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)) (footnote omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Id.* (quoting *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y. 2009)). "The analysis of the objective criteria also should be administratively feasible." *Id.* "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* (quoting *Newberg on Class Actions* § 3.3 p. 164 (5th ed. 2012)) (internal quotation marks omitted). Where a plaintiff satisfies this threshold issue, the district court then "conducts a rigorous analysis of the [R]ule 23 prerequisites." *Vega,* 564 F.3d at 1266 (citation and internal quotation marks omitted).

## B.   *Rule 23(a) Prerequisites*

The Rule 23 prerequisites constitute: numerosity, commonality, typicality, and

10

adequacy. That is, under Rule 23(a), a court may only certify a proposed class if:

- the class is so numerous that joinder of all members is impracticable ("numerosity");

- there are questions of law or fact common to the class ("commonality");

- the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and

- the representative parties will fairly and adequately protect the interests of the class ("adequacy").

Fed. R. Civ. P. 23(a)(1)-(4). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 131 S. Ct. at 2550. These prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 330 (1980)) (internal quotation marks omitted).

Certain analytical principles apply when evaluating certification under Rule 23(a). It "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1430 (2013) (quoting *Wal-Mart*, 131 S. Ct. at 2551). Indeed, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* (quoting *Wal-Mart*, 131 S.

11

Ct. at 2551). This analysis will frequently "overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S. Ct. at 2551. That is so because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 2551-52 (quoting *Falcon*, 457 U.S. at 160) (footnote omitted).

### C.    *Rule 23(b)(3)*

Having shown that each of the Rule 23(a) prerequisites apply, the plaintiff must also satisfy at least one of the provisions of Rule 23(b). Here, the named plaintiffs invoke Rule 23(b)(3). Doc. 27 at 2. They can only satisfy this provision if the court finds that:

- the questions of law or fact common to class members predominate over any questions affecting only individual members; and

- a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). The following considerations are "pertinent" in rendering this analysis:

- the class members' interests in individually controlling the prosecution or defense of separate actions;

- the extent and nature of any litigation concerning the controversy already begun by or against class members;

- the desirability or undesirability of concentrating the litigation of the

claims in the particular forum; and

•        the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The same analytical principles identified above regarding Rule 23(a) also govern certification under Rule 23(b). *Comcast*, 133 S. Ct. at 1432. "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–624 (1997)). Rule 23(b)(3) is an "adventuresome innovation," and it is "framed for situations in which class-action treatment is not as clearly called for." *Wal-Mart*, 131 S.Ct. at 2558 (quoting *Amchem*, 521 U.S. at 614-615) (internal quotation marks omitted). "That explains Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out), and the court's duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 133 S. Ct. at 1432 (quoting *Amchem*, 521 U.S. at 615).

## II.    Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a). "The Supreme Court has recognized an implied right of action for money damages in Title IX cases of intentional sexual discrimination and has held that a teacher's sexual harassment of a student constitutes actionable discrimination under Title IX." *Doe v. Sch. Bd. of Broward County, Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010) (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75–76 (1992)). However, "not all sexual harassment by teachers is sufficient to impose liability on a school district." *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In order to establish such liability, the plaintiff must satsify three different inquiries. *J.F.K. v. Troup County Sch. Dist.*, 678 F.3d 1254, 1255 (11th Cir. 2012) (citing *Doe*, 604 F.3d at 1254). The plaintiff must be able to:

- identify a person with "authority to take corrective measures in response to actual notice of sexual harassment" (the "appropriate person" prong);

- demonstrate that the notice was "sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment" (the "actual notice" prong); and

- show that the authority figure acted with deliberate indifference to the notice of harassment (the "deliberate indifference" prong).

*Id.* at 1255-56 (citing *Doe*, 604 F.3d at 1254).

The premise of this type of liability is "an official decision by the [Title IX] recipient not to remedy the violation." *Gebser*, 524 U.S. at 290. It "finds a rough

parallel in the standard of deliberate indifference." *Id.* "Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Doe*, 604 F.3d at 1259 (quoting *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 648 (1999)). In sum, "[t]he Title IX inquiry is contextual: it does not require school districts to simply do <u>something</u> in response to sexual harassment; rather, they must respond in a manner that is not 'clearly unreasonable in light of the <u>known</u> circumstances.'" *Id.* at 1263 (quoting *Davis,* 526 U.S. at 648) (emphasis in original).[5]

## DISCUSSION

## I.      The Proposed Class Is Unascertainable Because Membership Hinges On Mr. Acker's Ultimate Liability.

### A.      *The plaintiffs describe an impermissible "fail-safe" class.*

The defendants first argue that the plaintiffs' putative class definition is not "adequately defined and clearly ascertainable" because it "includes elements subject to ultimate proof." Doc. 34 at 14-15. They specifically cite language in the definition encompassing students who were "harassed, abused, or molested." *Id.* at 14 (citing

---

[5]The Supreme Court in *Davis* recognized an actionable Title IX claim against school districts for student-on-student sexual harassment that occurs on school premises. 526 U.S. at 643-49. Importantly, the standard for evaluating liability under such claims is more rigorous than that for teacher-on-student sexual harassment. *Sauls v. Pierce County Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) (citing *Davis*, 526 U.S. at 650-53).

Doc. 27-1 at 2). They observe that this court could only identify which individuals meet that definition "after each individual plaintiff proved her injury and liability is determined." *Id.* at 15. According to the defendants, there is no way to identify such persons at the present point, and such a class definition is thus improperly "fail-safe" in that it is "in essence framed as a legal conclusion." *Id.*

The court finds this argument somewhat persuasive. On the one hand, the question of whom Mr. Acker physically molested is a factual one that is realistically ascertainable. This observation is particularly true in the present case, as Mr. Acker has admitted to physically molesting over twenty female students over the years. However, the identities of the students Mr. Acker "sexually harassed" is not nearly so clear at this point. This applies *a fortiori* to the question of which students he "exposed to a sexually hostile educational environment" by virtue of his conduct. These are qualitatively different inquires than that of physical molestation. They fundamentally require legal determinations that this court can only render after a trial on the merits. For this reason, the court finds that the plaintiffs describe a "fail-safe" class.

A fail-safe class is "a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability."*Rodriguez v. Countrywide Home Loans, Inc.*, 695 F.3d

360, 369-70 (5th Cir. 2012) (citation omitted); *accord Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (defining a fail-safe class as "one

that is defined so that whether a person qualifies as a member depends on whether the

person has a valid claim"). The problems with such classes are both logical and

practical. On the logical front, the class definition is essentially circular. It defines its

members on the presumption that such members have viable claims against the

defendant. So, the class definition assumes what it ostensibly seeks to prove. This is

itself problematic. *See, e.g.*, *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y.

2012) (holding that proposed class definition limited to those charged fees that "were

not permitted" wrongly "defines the class . . . by the very liability the plaintiff seeks

to establish").

The problems compound, however, when one considers the practical

complications such definitions introduce. First, they permit plaintiffs to circumvent

res judicata and basically rig the certification process so that they cannot lose. That

is, "[e]ither the class members win or, by virtue of losing, they are not in the class

and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.*,

646 F.3d 347, 352 (6th Cir. 2011) (footnote and citations omitted). "A fail-safe class

thus creates a 'heads I win, tails you lose' situation, where class members either

receive a favorable judgment or are defined out of the class." Erin L. Geller, *The Fail-*

17

*Safe Class As an Independent Bar to Class Certification*, 81 Fordham L. Rev. 2769, 2771 (2013). This scenario is patently unfair to the defendant. Finally – and most obviously – a fail safe class "is unmanageable because the members of the class could only be known after a determination of liability." *Eager v. Credit Bureau Collection Servs., Inc.*, No. 1:13-CV-30, 2014 WL 3534949, at *4 (W.D. Mich. July 16, 2014) (quoting *Mazzei*, 288 F.R.D. at 55). In short, fail safe classes preclude the court from ascertaining the contours of the class, which is the *sine qua non* of Rule 23 certification. *See Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 624 (N.D. Ala. 2013) (quoting *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 663 (N.D. Ala. 2010)) ("[T]he first essential ingredient to class treatment is the ascertainability of the class.").

A fail-safe class definition does not necessarily doom certification. Indeed, some courts have allowed plaintiffs to amend such flawed definitions in order to cure the identified deficiencies. *See, e.g.*, *Messner*, 669 F.3d at 825 ("[T]he fail-safe problem is more of an art than a science . . . and often should be solved by refining the class definition rather than flatly denying class certification on that basis.") (citations omitted); *see also St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-CV-02224, 2013 WL 1076540, at *6 n.7 (E.D. Mo. Mar. 13, 2013) (collecting cases where courts have either revised class definitions to cure fail-safe deficiencies

or permitted plaintiffs to do so); *but see Randleman*, 646 F.3d at 352 (relying on fail-safe definition as one of two reasons to bar class certification). The defendants argue that the court should not afford the plaintiffs such an opportunity here. Doc. 34 at 16-17.

**B.    The plaintiffs' fail-safe class definition implicates their ability to satisfy numerosity.**

The court need not evaluate these arguments. It does not believe the plaintiffs – even if afforded the opportunity – could revise their class definition adequately to sustain certification. That is because their fail-safe class definition is arguably tethered to their ability to satisfy Rule 23's numerosity prerequisite. As noted, although he only plead guilty to eight counts of child sexual abuse, Mr. Acker admitted to molesting "over twenty" female students within the Shelby County public school system over the years. The Eleventh Circuit has indicated in dicta that "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted); *see also Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 666 (N.D. Ala. 1999) ("As a general rule, classes of more than 40 members are deemed to satisfy the numerosity requirement.") (citing *Cox*, 784 F.2d at 1553). "Although

19

mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (citations omitted). "Nevertheless, a plaintiff still bears the burden of making <u>some</u> showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega*, 564 F.3d at 1267 (emphasis in original).

The plaintiffs maintain that their proposed class easily satisfies this element. They argue in the following manner:

> Acker himself cannot remember the names of all the girls he molested, but he admitted that it was more than twenty girls spanning his entire tenure as a teacher and bus driver. Daniel Acker taught from 1984 through his retirement in May 2009. The proposed class includes <u>all female students in Acker's class and bus route starting from 1991 through 2009</u>. Only looking at a small sample of Acker's class size shows that there are <u>potentially hundreds of plaintiffs</u>, and likely more than forty (40). In 2000 Acker was assigned twenty-six (26) children in his class, 13 female. In 2002 Acker was assigned twenty-nine (29) children in his class, 10 female. In 2003 Acker was assigned twenty-six (26) children in his class, 11 females. (Ex. 7) Assuming that during the span of 18 years Acker only had 11 girls in each class each year, then on this formulation of the proposed class it is reasonable to assume that these prospective class members number 198 females. This calculation does not even take into account those girls who were on Acker's bus route. Accordingly, the likely class size is too large to make joinder practicable.

Doc. 27-1 at 19 (emphasis added). The extremity of this class description is telling. Indeed, as the defendants observe, its breadth likely outstrips the confines of the plaintiffs' proffered definition. Doc. 34 at 15-16. This fact strongly implies that the

desired expansion is essential to the plaintiffs' requested certification. That is, if the proposed class were limited to only those students Mr. Acker physically molested – the only group that can be presently ascertained – then certification would almost certainly fail because the group would be insufficiently numerous. Therefore, the plaintiffs likely appended to its class those girls whom Mr. Acker "sexually harassed" and "exposed to a sexually hostile educational environment" to compensate for this deficiency. The court, of course, does not have sufficient evidence to independently conclude that the plaintiffs fail the numerosity requirement. However – considered with the plaintiffs' unascertainable fail-safe class definition – the court has sufficient grounds to deny the plaintiffs class certification.[6]

## II. The Proposed Class Lacks Commonality and Typicality Because Its Members Assert Distinct Contentions Against The Defendants That Will Require Different Analysis and Possibly Produce Different Answers.

### A. *There is not sufficient commonality because the putative class reflects discrete injury allegations against the defendants.*

---

[6]Because the plaintiffs' class fails Rule 23's threshold ascertainability requirement, the court could stop here. *See, e.g.*, *Adair v. Johnston*, 221 F.R.D. 573, 578 (M.D. Ala. 2004) ("Because Adair's putative class is not adequately definite and ascertainable . . . [t]he court need not reach whether Adair's putative class would satisfy the other requirements of Fed. R. Civ. P. 23."). But, mindful of its duty to perform a "rigorous analysis" of their class certification motion, *Wal–Mart,* 131 S.Ct. at 2551, the court will proceed to show why the plaintiffs' class also fails Rule 23(a)'s commonality and typicality prerequisites. *See Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 (11th Cir. 2012) (recognizing that alternative rulings "enable [the Eleventh Circuit] to decide the case in one appeal, if there is an appeal, and will avoid the risk that another remand might be required").

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court in *Wal-Mart* has recently explained this requirement in the following manner:

> That language [of Rule 23(a)(2)] is easy to misread, since any competently crafted class complaint literally raises common questions. For example: Do all of us plaintiffs indeed work for Wal–Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have <u>suffered the same injury</u>. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways—by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must <u>depend upon a common contention</u> – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is <u>capable of classwide resolution</u> – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims <u>in one stroke</u>.

*Wal-Mart*, 131 S. Ct. at 2551 (internal quotations and alterations omitted) (emphasis added). In short, "[w]hat matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." *Id.* (quotation and internal alterations omitted) (emphasis in original). "Dissimilarities within the proposed class are what have the potential to impede the generation of common

answers." *Id.* (quotation omitted). However, when the class does pose common legal and factual questions that meet these qualifications, "even a single common question will do." *Id.* at 2556 (quotation omitted).

There are, to be sure, certain similarities within the plaintiffs' proposed class. They are all females, they were all (at different times) fourth graders at schools within Shelby County, and their gravamen in every case concerns the conduct of Mr. Acker and the Board (as well as its individual members). The class plaintiffs also all invoke Title IX and claim relief under its provisions. These commonalities, however, are insufficient – as is obvious from the Supreme Court's explanation above. It is not enough that the plaintiffs are all of the same sex, lived and went to school within the same locality, and invoke the same law against the same defendants. What is dispositive is whether they "suffered the same injury," such that they are essentially voicing a common contention (or contentions) against the defendants and can consequently secure class-wide relief. *Wal-Mart*, 131 S. Ct. at 2551. Such is not the case in the present action. Although they all fault the Board's "deliberate indifference" under Title IX, the putative plaintiffs here allege several distinct injuries.

This becomes clear when one scrutinizes the proposed class definition:

Any current or former female student during the time period that Dan Acker

23

worked for Shelby County School Board who was either injured, sexually harassed, abused or molested by Dan Acker or who witnessed such conduct or who was exposed to a sexually hostile educational environment through Acker's conduct.

Doc. 27 at 2. Quite apparently, there are at least two – and likely three – sub-classes of female students within this class. The first is those who were "either injured, sexually harassed, abused or molested by Dan Acker." The second is those who "witnessed such conduct" and therefore may have been put in imminent apprehension of such abuse. The final sub-class is those who were "exposed to a sexually hostile educational environment through Acker's conduct." In the latter case, the plaintiffs implicitly concede that this group includes those who were not even subjectively conscious of Mr. Acker's abuse. Still, the court admits – without deciding – that each set of individuals above may have viable Title IX claims against the defendants. However, the various groups describe fundamentally different injuries. At the very least, those who were conscious of Mr. Acker's abuse are qualitatively (and quantitatively) distinct from those who were not.

The plaintiffs' court filings unintentionally make this point clear. They argue that there are in fact "several" common contentions capable of class-wide resolution. Doc. 27-1 at 22. The common class questions – which, presumably, the plaintiffs contend generate common contentions – are allegedly the following:

- whether the defendants received actual notice of Mr. Acker's sexually abusive conduct in 1992;

- whether the Board, Dr. Doebler, and Mr. Martin are "appropriate school officials" under Title IX;

- whether, in returning Mr. Acker to the classroom, the other defendants were deliberately indifferent to an unreasonable risk of harm;

- following Mr. Acker's return to the classroom in 1992, whether Mr. Acker's continued and repeated sexual abuse of female students created a sexually hostile educational environment for female students in his fourth grade classes and on his bus route in violation of Title IX; and

- whether, given actual notice and deliberate indifference despite this notice, the plaintiffs may recover damages from Mr. Acker's creation of a sexually hostile educational environment following his return to the classroom from 1992 until his retirement.

*Id.* at 22-23. This recitation avoids addressing the primary inquiry under the commonality prong. Indeed, it resembles the "droves" of common questions that the Supreme Court derided in *Wal-Mart* as arising in any case and which were irrelevant to the commonality determination. Instead, what is paramount is whether the class plaintiffs suffered the same injuries and whether those injuries permit common answers.

The plaintiffs more directly address these concerns in their Reply, but their arguments undermine their attempt to show commonality. They argue that "each student suffered the same injury to her educational opportunities." Doc. 40 at 9 n.4

25

(internal quotation marks and citation omitted). Relying on *Reeves v. C.H. Robinson*,

594 F.3d 798 (11th Cir. 2010) and *Jennings v. University of North Carolina*, 482 F.3d

686 (4th Cir. 2007), they maintain that "<u>every</u> female student of Acker has a cause of

action based on the common circumstance of having been subjected to Acker's sexual

abuse of her similarly-situated peers." Doc. 40 at 10-11 (footnote omitted) (emphasis

added). In other words, "Acker's conduct gives rise to liability for any student within

his 'target' area – that is the protected group of girls who were students in Acker's

fourth grade classrooms, and the class therefore includes every female student of

Acker." *Id.* at 5-6 (quoting *Reeves*, 594 F.3d at 811). The plaintiffs further elaborate:

> Under the "target area" theory reasoning of *Jennings* and *C.H. Robinson*, each
> female child in Acker's "target area" of female students in his classroom was
> subject to a hostile environment based on sex and, as a result, was denied equal
> educational opportunities and has a claim under Title IX. This should be clear
> when one considers the effect of Acker's abuse of girls in the classroom. For
> those who understood the sexual motivations behind Acker's conduct, the fear
> was that she or her friends would become Acker's next target. For those girls
> who didn't understand the sexual nature of Acker's conduct, Acker's abuse
> manifested itself as favoritism and heightened attention toward his "targets."
> This apparent favoritism resulted in lower self-esteem for those girls who did
> not understand that being Acker's "favorite" was not a desirable thing to be.
> The injuries suffered by the girls who were targeted, those who feared being
> targeted, and those who suffered lowered self-esteem as a result of perceived
> favoritism are all injuries cognizable under Title IX as similarly depriving
> female students of access to educational opportunities.

*Id.* at 12-13 (footnote omitted). The plaintiffs additionally argue that "the issue of [the

Board's] deliberate indifference is a common contention capable of classwide

resolution" and that "class treatment will resolve the common questions of notice and deliberate indifference on a classwide basis 'in one stroke' and avoid conflicting determinations that might otherwise result if the class members were forced to bring multiple suits" *Id.* at 14-15.

The court does not find this argument persuasive, for several reasons. Certainly, all putative class members would be attacking the Board's deliberate indifference under Title IX. On a very general level, they all allege that Mr. Acker and the Board denied them educational opportunities on the basis of their sex. But, *Wal-Mart* makes clear that the plaintiffs may not abstract the commonality inquiry to this level. The court must instead discern whether they were all denied educational opportunities <u>in similar ways</u>. Moreover, *Reeves* concerned a Title VII (not Title IX) hostile work environment claim by an adult female worker against her former employer. 594 F.3d at 803-806. It was not a class action. The Eleventh Circuit there held that gender-specific verbal abuse did not have to be directed specifically at a plaintiff in order for her to have a viable Title VII disparate treatment claim. *Id.* at 811 (citing *Yuknis v. First Student, Inc.*, 481 F.3d 552, 553–54 (7th Cir. 2007)). Rather, if such abuse were directed at her "target area" – i.e., her protected group – that would be enough. *Id.* The plaintiffs' attempt here to shoehorn this legal theory into the Title IX teacher-on-student harassment class action context is, at the very

27

least, not self-evident.

Most importantly, though, the court need not decide now whether the plaintiffs' "target area" theory is valid under Title IX. What instead sways the court's judgment is that the plaintiffs here assert disparate injuries that will require disparate analysis and possibly merit disparate relief. Proving that those who were molested were denied educational opportunities would be different – perhaps categorically different — from proving the same with those who were unwittingly exposed to such an environment. Because of this fact, it is conceivable that the former group could secure relief whereas the latter group (or certain members of the latter group) could not. This conclusion bars the court from finding that the putative class is asserting common contentions capable of achieving "class-wide resolution . . . in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. The court, of course, does not want to minimize the various injuries alleged. Those who experienced molestation and abuse suffered greatly, as did those who witnessed such molestation and those who were exposed to such a predatory environment. Their injuries are simply not "common" under Rule 23.

### B.    *The named plaintiffs are atypical of their proposed class because the factual claims of the named group differ materially from the class.*

For similar reasons, the putative class lacks the required typicality. The Supreme Court has stated the following on this element:

28

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Falcon*, 457 U.S. at 157 n.13. In other words, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Cooper v. So. Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006). "Although the commonality and typicality requirements may overlap, traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff or plaintiffs in relation to the class." *Bryant v. Southland Tube*, 294 F.R.D. 633, 648 (N.D. Ala. 2013) (citing *Cooper*, 390 F.3d at 714) (internal quotation marks and alterations omitted). "The claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). However, "typicality may be defeated if factual differences dominate." *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 544 (N.D. Ala. 2001) (quoting

*Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668 (M.D. Fla. 2000)).

Material factual differences prevail between the named plaintiffs and the putative class. Each of the named plaintiffs claims to have suffered direct physical molestation at Mr. Acker's hands. *See* Doc. 10 at 8-12, 20-24. Such is not necessarily the case with the class they seek to represent. The class would include a potentially large group of female students whose participation in the case depends simply on their membership within one of Mr. Acker's fourth-grade classes over the roughly twenty-five years he taught. *See* Doc. 40 at 6 ("The class is ascertainable by reference to class rosters containing sufficient information for the parties to locate class members."). As noted, this group would include female students who had no awareness of Mr. Acker's abuse whatsoever. They may have indeed have a Title IX claim against the Board for placing them in such a situation, but their injuries are distinct from the named plaintiffs.

Further, the defendants assert a statute of limitations defense that will only apply selectively to the class. Doc. 17 at 4. This is a relevant concern regarding certification. *See Vega*, 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)) ("Going beyond the pleadings is necessary, as a court must understand the claims, <u>defenses</u>, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.") (emphasis

30

added). Although the contours of the defendants' statute of limitations defense are not precisely clear, they will certainly assert it against Ms. Hurt. *See* Doc. 34 at 25-26. This fact further drives a wedge between the named plaintiffs and the putative class. Considered with the enumerated differences above, the court finds that it precludes typicality under Rule 23. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.") (citations omitted).[7]

## CONCLUSION

For the foregoing reasons, the court hereby **DENIES** the plaintiffs' Motion for Class Certification under Rule 23. This is a grave matter, and the plaintiffs describe serious accusations against the defendants. Nothing in the court's analysis is intended to diminish these facts or to question the substantive merits of their claims. The court simply concludes that the plaintiffs have failed to satisfy the procedural requirements of Rule 23. The plaintiffs are still fully entitled to seek recourse outside of the class action format.

---

[7]The defendants' unique defense against Ms. Hurt would also undercut her ability to adequately represent the class under Rule 23(a)(4). *See, e.g*, 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1765 (3d ed. 2005) (citing cases in which a unique defense defeated adequacy of representation).

31

**DONE** and **ORDERED** this the 21st day of August, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge